UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M., | No. 2:24-cv-03384-KJM-JDP |
| Plaintiff, | ORDER |
| v. | |
| Red Roof Franchising, LLC, et al., | |
| Defendants. | |

In this action, the plaintiff, who is using the pseudonym "J.M." to preserve her privacy, asserts claims against a hotel franchising entity and the franchisee owner of a Stockton, California hotel (Red Roof Franchising LLC or "RRF" and PDK Hospitality Franchising LLC or "PDK," respectively). She alleges she is the victim of a sex trafficking operation that used rooms in the hotel, and she claims the defendants are liable as beneficiaries or co-conspirators in that operation. RRF moves for judgment on the pleadings. As explained in this order, the court grants the motion in part as to the conspiracy claim, but with leave to amend, and otherwise denies it.

**I.    BACKGROUND**

The court assumes the allegations in J.M.'s complaint are true for purposes of the pending motion. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). J.M. alleges she "was held captive and sold for sex" between 2006 and 2012. First Am. Compl. ¶ 24, ECF No. 21. Her

1

captors used violence and threats and induced her dependence on illegal drugs to keep her within their control. *Id.* They "frequently" used rooms at a Red Roof Inn in Stockton, California, because it was a convenient, anonymous and central location for their clients, the "johns" who paid for sex. *Id.* ¶ 26. J.M. saw many of the same hotel staff members when she was there. *Id.* ¶ 32. It was or should have been obvious to them what was happening to her, among other reasons because of the high foot traffic at odd hours, her captors' request for a room in the back of the building, their efforts to solicit clients on the hotel grounds, cash payments for rooms, the sounds of beatings and loud cries for help, unusual numbers of condoms in the garbage, and women wearing clothing that was inappropriate for the weather. *See id.* ¶¶ 32–34. She claims some hotel employees even told her captors to keep their business "discreet," told the "johns" to "hurry up," and threatened to call the police. *See id.* ¶ 34.

RRF and PDK operated the Red Roof Inn at the time. *Id.* ¶¶ 10, 12. RRF is a division of Red Roof Inns, Inc. (RRI), a publicly traded company that "provides franchising opportunities to brand hotels and motels to local owners across the country and around the world." *Id.* ¶ 10. J.M. alleges RRF controlled many details of the day-to-day business at the hotel where she was held captive, from the temperature of the coffee to the online booking system. *See id.* ¶¶ 58–69. She claims RRF had enough information to realize something was wrong, citing the guests' use of the hotel's wireless internet to visit websites where they could pay for sex, large numbers of same-day bookings for one-night stays, cash payments for rooms, and frequent requests for new towels and bedding, among other red flags. *See id.* ¶¶ 75, 78, 83. J.M. also makes several allegations to support her claim that "the hospitality industry is a major life source" of what she describes as a "human trafficking epidemic both in the U.S. and abroad." *Id.* ¶ 41. She alleges "hotels are the top choice venue for abusers" because they offer "anonymity and non-traceability." *Id.* ¶ 47. And she argues RRF and RRI were aware of this broader problem but did not take effective steps to put an end to human trafficking in Red Roof properties, including at the hotel where she was often held. *See id.* ¶¶ 86–89.

In 2022, J.M. filed a lawsuit in this court against RRI (but not RRF) under the federal Trafficking Victims Protection Reauthorization Act (TVPRA). *See generally* Compl., *J.M. v.*

1  *Choice Hotels Int'l, Inc.*, No. 22-672 (Apr. 15, 2022), ECF No. 1.  The TVPRA, which Congress
2  originally passed in 2000, "created several new federal criminal offenses intended to more
3  comprehensively and effectively combat human trafficking," including "sex trafficking by means
4  of force, fraud or coercion."  *Does 1–10 v. Fitzgerald*, 102 F.4th 1089, 1091 (9th Cir. 2024) (first
5  quoting *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1164 (9th Cir. 2022), then quoting
6  18 U.S.C. § 1591)).  The TVPRA also includes a provision allowing victims of human trafficking
7  to bring civil actions against anyone who "knowingly benefits, or attempts or conspires to
8  benefit . . . in a venture which that person knew or should have known has engaged in an act" that
9  violates the TVPRA.  18 U.S.C. § 1595(a).

10       This court ultimately granted RRI's motion for summary judgment.  *See* Order (Oct. 21,
11 2024), Case No. 22-672, ECF No. 167.  In response to that motion, J.M. did not cite evidence that
12 could prove at trial that RRI's employees—as opposed to the employees of another entity, such as
13 RRF or the local hotel owners and operators—knew about the alleged sex trafficking, let alone
14 that they reported that information to RRI.  *See id.* at 9–11.  Nor did J.M. cite evidence that could
15 prove RRI was vicariously liable as a result of its relationship with RRF or another entity.  *See id.*
16 at 11–13.  On the record as it then stood, the relationship between RRI and RRF was quite murky,
17 due in part to ambiguous deposition testimony by the person RRI had designated as its
18 representative under Rule 30(b)(6).  *See id.* at 12.  For example, that witness sometimes used the
19 same phrase to refer to both RRI and RRF, and it was unclear whether RRF was a wholly owned
20 subsidiary of RRI.  *See id.*  The record also lacked evidence that could permit J.M. to "pierce" the
21 so-called "corporate veil" that separates a parent company from its subsidiaries for many
22 purposes.  *See id.* at 12–13 (citing *Ranza v. Nike*, 793 F.3d 1059, 1070 (9th Cir. 2015)).  J.M.
23 currently is pursuing an appeal of this court's judgment against her in her earlier case against
24 RRI.  *See* Not. Appeal, Case No. 22-672, ECF No. 169.  In that appeal, RRI has emphasized the
25 distinction between itself and RRF, as well as expressly characterizing RRF's role as the

1    franchisor in the operations of the Stockton hotel as "undisputed." *See, e.g.*, RRI Answering Br.
2    at 6–7, 33–34, No. 24-7013 (9th Cir. May 12, 2025), Dkt. No. 30.1.[1]

3    While her appeal has been pending, J.M. has pursued her allegations in this second case,
4    in which she has named RRF and PDK as defendants, rather than RRI. *See generally* Compl.,
5    ECF No. 1; First Am. Compl., ECF No. 21. She claims now that RRF and PDK are liable under
6    the TVPRA because they have benefited financially from sex trafficking. *See* First Am. Compl.
7    ¶¶ 123–33. She also claims RRF and PDK are part of a conspiracy to make profits by renting
8    rooms to sex traffickers. *See id.* ¶¶ 134–46. RRF moves for judgment on the pleadings under
9    Federal Rule of Civil Procedure 12(c). *See generally* Mot., ECF No. 38. The court received full
10   briefing and took the motion under submission without holding a hearing. *See generally* Opp'n,
11   ECF No. 45; Reply, ECF No. 49; Min. Order, ECF No. 50.

12   **II.   LEGAL STANDARDS**

13   In response to a motion for judgment on the pleadings, the court must decide whether the
14   moving party has demonstrated "there is no issue of material fact in dispute" and it "is entitled to
15   judgment as a matter of law." *Fleming*, 581 F.3d at 925. In most cases, a Rule 12(c) motion calls
16   for essentially the same analysis as a motion to dismiss for failure to state a claim under Rule
17   12(b)(6). *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021). That is, the court
18   assumes the plaintiff's factual allegations are true and takes those allegations in the light most
19   favorable to the plaintiff. *Fleming*, 581 F.3d at 925. The court also must consider any documents
20   the plaintiff has "incorporated into the complaint by reference," as well as any "matters of which
21   a court may take judicial notice." *Webb*, 999 F.3d at 1201 (quoting *Tellabs, Inc. v. Makor Issues*
22   *& Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

23   Because Rule 12(c) motions can end the case, district courts often hesitate to grant them,
24   lest they wrongly deprive a litigant "a full and fair hearing on the merits." *Haller v. Advanced*
25   *Indus. Comput. Inc.*, 13 F. Supp. 3d 1027, 1029 (D. Ariz. 2014) (quoting *Carrasco v. Fiore*
26   *Enters.*, 985 F. Supp. 931, 934 (D. Ariz. 1997)). As one federal court of appeals has put it, "the

---

[1] The court grants J.M.'s request for judicial notice that RRI has made the statements and arguments in this document. *See* Fed. R. Evid. 201(b)(2), (c)(2).

4

party seeking judgment on the pleadings shoulders a heavy burden of justification." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019). Several courts, including this one, have thus required the moving party to show it is "clearly entitled to prevail." *E.g.*, *Kruse v. State of Hawai'i*, 857 F. Supp. 741, 749 (D. Haw. 1994), *aff'd*, 68 F.3d 331 (9th Cir. 1995); *see also Calamco v. J. R. Simplot Co.*, No. 21-1201, 2023 WL 4239107, at *3 (E.D. Cal. June 28, 2023); 5C Charles A. Wright, et al., Fed. Prac. & Proc. § 1368 n.3 (April 2023 Update to 3d ed.) (collecting authority).

### III.  STATUTE OF LIMITATIONS

RRF first argues the statute of limitations expired before J.M. filed this case. *See* Mot. at 3–5. A statute of limitations creates an affirmative defense that a defendant must plead and prove. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). RRF must therefore show "beyond doubt" in its Rule 12(c) motion that J.M. cannot prove she pursued her claims within the statute of limitations. *Rand v. Midland Nat'l Life Ins.*, 857 F. App'x 343, 347 (9th Cir. 2021) (unpublished) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)). RRF can do this by showing it is "obvious on the face of [plaintiff's] complaint" that the limitations period had already run out before this case began. *Rivera*, 835 F.3d at 902.

The TVPRA sets a ten-year limitations period for claims like those in this case: "No action may be maintained under" the civil claims provision in § 1595(a) "unless it is commenced not later than the later of—(1) 10 years after the cause of action arose; or (2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense." 18 U.S.C. § 1595(c). J.M. alleges she "first met her traffickers in approximately 2006 when she was 25 years old," First Am. Compl. ¶ 24, which means she was not a "minor at the time of the alleged offenses," 18 U.S.C. § 1595(c), and the question under § 1595(c) is whether she filed this case within "10 years after the cause of action arose."

For federal statutory claims like a civil claim under the TVPRA, a cause of action normally "arises" when it "accrues," i.e., when it "comes into existence," *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013) (quoting *United States v. Lindsay*, 346 U.S. 568, 569 (1954)), or in

5

other words, when it is "complete and present," *Graham Cnty. Soil & Water Cons. Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 418 (2005) (quoting *Bay Area Laundry & Dry Cleaning Pens. Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192 at 201 (1997)).  J.M. alleges she escaped her traffickers in 2012, which implies unambiguously that the underlying trafficking violations did not continue after 2012, and thus that her TVPRA claims accrued in 2012 at the latest.  Several district courts have interpreted and applied the TVPRA's limitations period this way.  *See, e.g.*, *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 638 (E.D. Mich. 2024) (finding TVPRA claims accrued at time of underlying TVPRA violations); *Ardolf v. Weber*, No. 18-12112, 2020 WL 5209525, at *3–4 (S.D.N.Y. Sept. 1, 2020) (same); *Hongxia Wang v. Enlander*, No. 17-4932, 2018 WL 1276854, at *3–4 (S.D.N.Y. Mar. 6, 2018) (same).  This court did the same in J.M.'s previous case against RRI.  *See* Order (Oct. 18, 2022) at 10, Case No. 22-672, ECF No. 42 (holding at pleadings stage J.M.'s claims against RRI accrued in 2012 in response to motion to dismiss based on statute of limitations).

       J.M. argues her claim did not accrue in 2012, but rather much later, when she first understood the "full scope" and causes of her injuries.  *See* Opp'n at 8–10.  Courts normally refer to this type of accrual rule as a "discovery rule," i.e., that claims do not accrue until plaintiffs know or reasonably should know of the injury or harm at the root of their claims.  *See Rotkiske v. Klemm*, 589 U.S. 8, 12 (2019); *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2010).

       To apply a discovery rule would not be appropriate in this case.  To explain why, it is helpful to begin by distinguishing three categories of claims and their corresponding limitations periods.  In the first, Congress says nothing about the statute of limitations.  One prominent example of a statute in this category is 42 U.S.C. § 1983.  *See Wallace v. Kato*, 549 U.S. 384, 387–88 (2007).  Another is federal jurisdiction over maritime and admiralty cases, in which federal courts must often develop, modify, and create new common-law rules rather than interpret statutory provisions.  *See The Dutra Grp. v. Batterton*, 588 U.S. 358, 360–61 (2019); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 489–90 (2008).  In the second category, Congress does define a limitations period in a statute, but does not say whether a plaintiff's knowledge or discovery of any particular information is relevant to deciding when a claim accrues.  The

6

TVPRA is an example of a statute in this category. It does not refer to the victim's knowledge or discovery of information. As summarized above, § 1595(c) says only that an action must commence "not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). Another example is the Fair Debt Collection Practices Act, which gives federal courts jurisdiction to hear certain civil claims "within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d). Finally, in the third category, Congress specifies that a claim accrues when a plaintiff learns about or discovers some specific information or violation. It might specify, for example, that an action "may be brought . . . within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later." 12 U.S.C. § 3416.

When federal courts resolve disputes about a given statute of limitations, they begin "by analyzing the statutory language." *Rotkiske*, 589 U.S. at 13 (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)). When Congress has said that a claim accrues when a plaintiff discovers a violation or learns some other specific information, i.e., in the third category of claims described above, then the analysis is likely to be straightforward: the statute unambiguously sets the accrual date, and there is no need to look any further. *See id.* at 14–15. The analysis is much different in the first situation described above, i.e., when there is no statutory language to analyze. The court must look elsewhere. The accrual date of a § 1983 claim, for example, is "'governed by federal rules conforming in general to common-law tort principles,'" which include the principle "that a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action and cause of the injury." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Wallace*, 549 U.S. at 388). Or in the case of an alleged wrongful death in a maritime case, the court would look to general principles applied in previous decisions by federal courts adjudicating admiralty and maritime cases. *See, e.g., Deem v. William Powell Co.*, 33 F.4th 554, 559–60 (9th Cir. 2022).

The task can be more complicated in the second category of claims, i.e., in a case based on a statute that includes a limitations period, but does not specify expressly whether a plaintiff's knowledge or discovery is relevant for deciding when a claim accrues, as is true here under § 1595(c). In general, the Supreme Court has held that a statutory claim accrues "'when the

7

plaintiff has a complete and present cause of action,'" not when "'the plaintiff has discovered'" or reasonably should have discovered the cause of action. *Gabelli v. S.E.C.*, 568 U.S. at 448–49 (2013) (first quoting *Wallace*, 549 U.S. at 388, then quoting *Merck*, 559 U.S. at 644). The Supreme Court has described this rule of accrual as the "standard rule." *Id.* at 448 (quoting *Wallace*, 549 U.S. at 388). But as that formulation implies, there are exceptions.

Federal courts have made one longstanding exception in cases of alleged frauds, recognizing "a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded." *Id.* (emphasis in original) (quoting *Merck.*, 559 U.S. at 644). If a plaintiff has been injured by a fraud but is ignorant of that deception, and if that ignorance is not for any lack of diligence or care on the plaintiff's behalf, then the limitations period "does not begin to run until the fraud is *discovered*." *Merck*, 559 U.S. at 644–45 (emphasis in original) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).

Federal courts occasionally also have "applied forms of the 'discovery rule' to claims other than fraud" for many years, and the Supreme Court has acknowledged and sometimes followed that practice in a few settings, such as in cases of alleged medical malpractice and latent disease, although it has not always expressly approved of or formally adopted it. *Merck*, 559 U.S. at 645; *see also TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001); *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *United States v. Kubrik*, 444 U.S. 111, 118–19 (1979); *Urie v. Thompson*, 337 U.S. 163, 170 (1949)). In addition, an "'overwhelming majority of courts' today use the discovery rule for determining accrual in copyright cases." *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1242 (9th Cir. 2022) (quoting 6 William F. Patry, Patry on Copyright § 20:19 (2013)). The Supreme Court likewise has acknowledged this practice, but it has declined to weigh in on whether it is correct to employ a discovery rule in the copyright context. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 337–38 (2017); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 n.4 (2014).

For some time, lower federal courts also applied a discovery rule "generally" to any federal statute that was "silent on the issue," i.e., in the second category, as here, when Congress

8

has expressly set a limitations period but has not specified whether courts should employ a discovery rule. *TRW*, 534 U.S. at 27 (quoting *Rotella*, 528 U.S. at 555). The Supreme Court has never adopted that position as its own, however, *see id.* at 27–28, and at least two justices made clear at one point they would have rejected a general discovery rule outright. *See id.* at 37 (Scalia, J., concurring in the judgment, joined by Thomas, J.).

Then in 2019, a Supreme Court majority agreed with those two justices and formally rejected the "general discovery rule" for claims under the Fair Debt Collection Practices Act. *Rotkiske*, 589 U.S. at 14 (quotation marks omitted). The Court did not revisit the longstanding "equitable doctrine that delays the commencement of a statute of limitations in fraud actions" specifically, nor the discovery rule as it may apply in cases of alleged medical malpractice, latent disease or copyright. *Id.* at 14–15 (quotation marks and citations omitted). It nevertheless made clear that lower federal courts should not infer from the mere absence of any statutory references to "knowledge," "discovery" or similar concepts that any particular statutory limitations period is subject to a general discovery rule. *See id.* at 14.

Under *Rotkiske*, this court cannot infer that Congress intended courts to employ a discovery rule from the mere absence of any reference to a discovery rule within the TVPRA. J.M. cites *Rotkiske*, but neither confronts the Supreme Court's reasoning in *Rotkiske* nor supports her argument with an analysis of the language of the TVPRA. *See* Opp'n at 8. She cites no case in which any federal court has applied a discovery rule to a civil claim under the TVPRA, and this court is aware of none. Federal courts instead have employed the "standard" accrual rule. *See, e.g.*, *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 670 (S.D.N.Y. 2024) ("TVPRA claims accrue on the last date the wrongful conduct occurs."). It appears, moreover, that only one federal court has addressed the discovery rule expressly in a TVPRA case, and that court rejected the position J.M. now advances. *C.C. v. Rashid*, No. 23-02056, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025). As that court explained, the language in § 1595(c) parallels language the Supreme Court has interpreted as incorporating the "standard rule" rather than the discovery rule. *See id.* (citing *Bay Area Laundry*, 522 U.S. at 201).

J.M. argues instead that "in the Ninth Circuit, a federal statutory claim accrues when the victim knows—or reasonably should know—of the violation that caused her damages." Opp'n at 8. The cases she cites do not support that argument.

Three of the cases J.M. cites predate *Rotkiske*. *See generally Gregg*, 870 F.3d 883; *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005); *Landreth v. United States*, 850 F.2d 532 (9th Cir. 1988). If the Circuit had employed a general discovery rule in these cases, then this court would at least arguably be bound not to follow that rule under the reasoning in *Rotkiske*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that when "intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority . . . district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled").

But in *Gregg*, *Living Designs* and *Landreth*, the Ninth Circuit did not actually employ a generalized discovery rule, so it is not necessary to consider whether they are consistent with the reasoning in *Rotkiske*. In *Gregg*, the plaintiff was asserting claims under § 1983. *See* 870 F.3d at 886. As noted above, the court's interpretive task in a § 1983 case is very different from its task in a case about the TVPRA. Unlike the TVPRA, § 1983 does not define any limitations periods. As the Circuit explained in *Gregg*, "[t]he accrual date of a § 1983 claim is a matter of federal law, 'governed by federal rules conforming in general to common-law tort principles.'" 870 F.3d at 887 (quoting *Wallace*, 549 U.S. at 388). The discovery rule is one of those "common-law tort principles." *See id.* (citing *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012)). In this case, by contrast, this court cannot "second-guess Congress's decision" not to add a "discovery provision" to the express statute of limitations within the TVPRA. *Rotkiske*, 589 U.S. at 14. Next, in *Living Designs*, the Circuit applied the traditional and narrow fraud-focused discovery rule that the Supreme Court did not disturb in *Rotkiske*. *See* 431 F.3d at 365 ("Plaintiffs' RICO claims accrued when Plaintiffs had actual or constructive knowledge of DuPont's fraud."). Finally, *Landreth* was about a medical malpractice claim under the Federal Tort Claims Act. *See* 850 F.2d at 533. In that setting, "a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury

10

and its cause," a rule the Supreme Court itself has applied. *Id.* (citing *Kubrick*, 444 U.S. 111). J.M. does not allege fraud or medical malpractice.

The other cases J.M. cites were decided after *Rotkiske*, so it is not this court's place to consider whether those decisions are consistent with the Supreme Court's reasoning. They do not support J.M.'s position in any event. In one of these later cases, *Deem*, cited above, the plaintiff was pursuing a wrongful death claim in admiralty. *See* 33 F.4th at 556. The Circuit therefore was developing the federal general maritime law that applies to common law claims of wrongful death. *See id.* at 560–61. It was not interpreting the limitations provisions of a federal statute, which is the exercise this court undertakes now. *See Rotkiske*, 589 U.S. at 14–15. For that reason, the Circuit's conclusion in *Deem*, that a "discovery rule should be applicable," 33 F.4th at 560, does not authorize this court to reinvigorate the general discovery rule the Supreme Court expressly rejected in *Rotkiske*. Nor does the Circuit's reasoning in *Deem* support J.M.'s position on its own terms. As the Circuit took pains to explain, "when a seaman dies and a wrongful death claim is made for the benefit of the seaman's family, . . . the relevant injury is not to the seaman but to the seaman's family members who are deprived of the benefit of the seaman's presence because of his death." *Id.* "Those damages to the family members can only occur on or after the death of the seaman." *Id.* A plaintiff cannot allege there was a wrongful death before any death has occurred, no matter what "discovery rule" might also apply to such a claim.

The other case J.M. cites to support her argument in favor of a broad discovery rule is a copyright case, *Starz*, 39 F.4th 1236, also cited above. As the Circuit explained in its opinion in *Starz*, courts use the discovery rule for determining accrual in copyright cases, and the Supreme Court has twice declined to decide whether that practice is correct. *Id.* at 1241–42. By contrast, and as summarized above, no court appears to have interpreted the TVPRA as authorizing courts to use a general discovery rule, and at least one district court within this circuit has expressly rejected the discovery rule in a TVPRA case. For all of these reasons, the court declines to apply a discovery rule to J.M.'s claims.

Although the court declines to apply the discovery rule, and although 2012 is more than ten years before J.M. filed this case in 2024, RRF is not necessarily entitled to judgment on the

11

pleadings based on the ten-year limitations period. As J.M. argues, Opp'n at 11–13, and as RRF acknowledges, a statutory limitations period may be paused or "tolled" as a matter of equity if the plaintiff was "reasonably diligent" in pursuing her rights but faced "an impediment to filing caused by extraordinary circumstance," Mot. at 3–4 (quoting *Smith v. Davis*, 943 F.3d 582, 600 (9th Cir. 2020) (en banc)). This "equitable tolling" rule is "a long-established feature of American jurisprudence derived from 'the old chancery rule,'"[2] and federal courts "presume that equitable tolling applies if the period in question is a statute of limitations and if tolling is consistent with the statute." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10–11 (2014) (quoting *Holmberg*, 427 U.S. at 397). Federal district courts have refused to dismiss TVPRA claims specifically when it is unclear from the complaint whether the limitations period should be tolled. *See, e.g.*, *Doe v. Fitzgerald*, No. 20-10713, 2022 WL 425016, at *4 (C.D. Cal. Jan. 6, 2022); *Hongxia*, 2018 WL 1276854, at *4. By contrast, courts have rejected a plaintiff's tolling arguments at the pleadings stage only if the complaint lacks any allegations that might plausibly suggest the limitations period could be tolled. *See, e.g.*, *C.C.*, 2025 WL 1785273, at *4; *Levin*, 747 F. Supp. 3d at 674–75.

In this case, it is unclear whether the limitations period may properly be tolled. That is true for two reasons. First, J.M. alleges she suffered from extreme abuse that had lasting psychological consequences and that prevented her from understanding her injuries and their

---

[2] In federal courts today, "[t]here is one form of action—the civil action. Fed. R. Civ. Civ. P. 2. Before this rule was adopted, i.e., before the "merger of law and equity," *Petrella*, 572 U.S. at 678, federal courts distinguished "actions at law" on the law side of the court from "suits in equity" on the equity side. Fed. R. Civ. P. 2, Advisory Committee Note to 1937 Amendment. That distinction may or may not have been meaningful, even when Rule 2 was adopted. *See* 4 Charles A. Wright, et al. Fed. Prac. & Proc. Civ. § 1041 (4th ed., updated 2025). But the equitable tradition is still meaningful today in at least one respect, as the Supreme Court held only a few months ago: a federal court's equitable powers are those "'traditionally accorded by courts of equity at our country's inception." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2551 (2025). This court employs the equitable powers granted to it under the Judiciary Act of 1789, i.e., those "sufficiently 'analogous' to the relief issued 'by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act.'" *Id.* (quoting *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999)). The power to equitably toll a claim is one of those powers, derived as it is from a rule employed in the English court. *See Holmberg*, 327 U.S. at 397; *Bailey v. Glover*, 88 U.S. 342, 348 (1874).

causes, both during the time of her captivity and in the years after she escaped. *See* First Am. Compl. ¶¶ 117–21; *see also* Opp'n at 10 (arguing in context of discovery rule plaintiff needed "an adequate chance to recover," to "see[] herself as a victim" and "to rebuild her life"). It is reasonable to infer from these allegations that J.M. might be able to prove she acted diligently by pursuing this case but was thwarted by the extraordinary consequences of her years in captivity, which she says included forced sex, beatings, the deprivation of food and water and forced drug dependency. The court must draw these reasonable inferences in her favor at this stage. *See Fleming*, 581 F.3d at 925. Second, it is plausible to infer at this early stage that J.M. could later prove she was stymied in her diligent efforts to pursue claims against the proper defendant by unusual circumstances beyond her control that surfaced during her 2022 lawsuit against RRI, such as a persistent lack of clarity about whether RRI, RRF, a local hotel operator or another entity was responsible for the operation of the Red Roof Inn in Stockton. *See, e.g.*, Order (Oct. 21, 2024) at 6–7, 10, 12 (describing muddled corporate records, missing evidence and vague deposition testimony by a designated corporate witness). It is not "obvious on the face of the complaint" that J.M. was not diligent or whether this lack of clarity was within her power to resolve. *Rivera*, 835 F.3d at 902. Nor can the court reach that conclusion "beyond doubt" based on the pleadings alone. *Rand*, 857 F. App'x at 347 (quoting *Supermail*, 68 F.3d at 1207).

      RRF argues J.M. could not prove she faced any obstacle to filing this case because she did in fact file a lawsuit against a different entity, RRI, more than two years ago. *See* Mot. at 4. RRF also argues J.M. "could have joined RRF as a defendant in that 2022 action." *Id*. If J.M. can ultimately prove her injuries prevented her from filing a lawsuit for three years or more, however, then she could show the limitations period was tolled for at least three years, which would show a 2024 lawsuit based on events in 2012 would not necessarily have been come too late. It is not clear from the face of the complaint that a three-year tolling period would be too long. Nor is it clear on the face of J.M.'s current complaint whether J.M. could have joined RRF as a defendant in the 2022 action against RRI, nor when it would have been possible to do so and why. These questions can be answered only through discovery and by referring to evidence beyond the pleadings. "This is not simply a legal question, as the Court will have to make a fact-intensive

13

1 inquiry on whether equitable tolling is appropriate . . . . '[T]he better practice is to resolve [this
2 dispute] on summary judgment, after full discovery.'" *Fitzgerald*, 2022 WL 425016, at *4
3 (quoting *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1160 (9th Cir. 2009)).

4     In sum, RRF has not demonstrated it is "clearly entitled to prevail" based on an
5 affirmative defense under the statute of limitations. *Kruse*, 857 F. Supp. at 749.

## IV.   SUFFICIENCY OF THE ALLEGATIONS

7     Beyond its affirmative defense, RRF contends J.M.'s complaint is based on only
8 "conclusory allegations" and thus falls short of the relevant pleading standards. Mot. at 1. As
9 noted, J.M. alleges RRF is liable both as a conspirator and as a direct beneficiary. *See* First Am.
10 Compl. ¶¶ 123–46.

11     As for the claim of conspirator liability, RRF contends it is entitled to judgment on the
12 pleadings because J.M.'s allegations could establish "parallel conduct" at most, not a conspiracy.
13 *See* Mot. at 12–13. J.M. does not address this argument in her opposition brief. The court
14 construes her silence as a concession that RRF is entitled to judgment of her conspiracy claim on
15 the pleadings as they now stand. *See Doe v. Ritz-Carlton Hotel Co., L.L.C.*, No. 23-05218,
16 2024 WL 2059087, at *2 (N.D. Cal. May 7, 2024) (dismissing undefended claim). The Ninth
17 Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to
18 amend the pleading was made, unless it determines that the pleading could not possibly be cured
19 by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)
20 (quoting *Doe v. United States*, 58 F.3d 494, 497 (1995)). The court cannot exclude the possibility
21 J.M. could assert a viable civil conspiracy claim in a further amended complaint. The court thus
22 will permit J.M. to further amend her complaint, if she wishes and if amendment is possible
23 within the confines of Rule 11.

24     For J.M.'s other claims, RRF contends the complaint lacks allegations that, if true, could
25 show RRF or its employees knew about or benefitted from the alleged trafficking. Mot. at 5.
26 This court discussed the elements of a beneficiary claim under § 1595 extensively in resolving
27 certain matters in the 2022 case against RRI. *See, e.g.*, Order (Oct. 18, 2022), Case No. 22-672,

14

1  ECF No. 42; Order (May 15, 2023), Case No. 22-672, ECF No. 70.  Only a brief review is
2  necessary now.

3        The TVPRA authorizes civil claims against anyone who "knowingly benefits, or attempts
4  or conspires to benefit . . . in a venture which that person knew or should have known has
5  engaged in an act" that violates the TVPRA's substantive prohibitions.  18 U.S.C. § 1595(a).  To
6  state a claim against a direct beneficiary, a plaintiff must allege facts that could prove the
7  defendant knowingly benefitted from "participation in a venture" that it knew or should have
8  known was engaged in trafficking the plaintiff.  *See* Order (Oct. 18, 2022) at 4, Case No. 22-672,
9  ECF No. 42 (citations and quotation marks omitted).  First, with respect to "knowing benefit,"
10 § 1595(a) "merely requires defendants knowingly receive a financial benefit, and the money
11 defendants receive from traffickers' room rentals constitutes such a benefit."  *Id.* at 5.  Second,
12 "the phrase 'participation in a venture' requires a plaintiff to 'allege that the franchisors took part
13 in a common undertaking or enterprise involving risk and potential profit.'"  *Id.* at 6 (quoting *Doe*
14 *#1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021)).  Third, as for what a defendant
15 "knew or should have known," it is not enough to allege a "general knowledge of sex trafficking
16 problems in the hotel industry, or even at defendants' franchisee hotels."  *Id.* at 8.

17       In the prior case against RRI, this court decided J.M. had plausibly alleged RRI was liable
18 as a beneficiary.  First, J.M. alleged RRI received royalty payments or percentages of room
19 revenues from the franchisee hotel where she was held.  *See id.* at 5–6.  Second, she alleged RRI
20 participated in a venture for a variety of reasons: its employees witnessed obvious signs of sex
21 trafficking, they reported red flags up the chain, and RRI controlled booking and payment
22 systems and set prices for rooms.  *See* Order (May 15, 2023) at 6–7, Case No. 22-672, ECF No.
23 70.  Third, she alleged RRI and its employees either knew about or ignored several signs of sex
24 trafficking at the Stockton Red Roof Inn.  *See id.* at 4–5, 7–8.

25       J.M. now makes essentially the same allegations against RRF.  *Compare, e.g.*, First Am.
26 Compl. ¶¶ 32–34 (allegations against RRF in this case) *with, e.g.*, Order (May 15, 2023) at 4–5,
27 Case No. 22-672, ECF No. 70 (summarizing allegations against RRI in previous case).  RRF
28 offers no persuasive reason to differentiate this case from the case against RRI.  As before, the

court finds J.M. has alleged facts that, if true, could support a claim of beneficiary liability under the TVPRA.

As noted, however, J.M. ultimately did not support her allegations against RRI with evidence in response to RRI's motion for summary judgment. RRF urges the court to bar J.M. from pursuing her claims in this case based on that previous failure. *See* Mot. at 8–9. "The preclusive effect of a federal-court judgment," such as this court's judgment in the case against RRI, "is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).[3] "For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rules' of res judicata, which [the Supreme] Court has ultimate authority to determine and declare." *Id.* (other alterations omitted) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). Under those uniform rules, "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Id.* at 892. "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire*, 532 U.S. at 748–49).

RRF relies on the second doctrine, issue preclusion. *See* Reply at 9–10. A later action is not barred under that doctrine unless "the issue at stake was identical in both proceedings" and it "was actually litigated and decided in the prior proceedings," among other requirements. *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012). The relevant "issue" in this case is not "identical" to the issue in 2022 case. In the 2022 case, plaintiff alleged RRI was liable as a

---

[3] RRF argues this court must employ California law, but it relies on the mistaken premise that this is a diversity case. *See* Mot. at 8. Because J.M.'s claims arise directly under a federal statute, i.e., the TVPRA, this is a federal question case.

16

beneficiary; in this case, she alleges RRF is a beneficiary.  This court did not "actually decide" whether J.M. could prove RRF was a beneficiary in the case against RRI.

RRF argues J.M. "has already litigated and failed to establish any a cognizable connection between RRI, RRF, and RRI Stockton."[4]  Mot. at 4.  RRF does not explain why this action depends on the resolution of that issue or why that issue is relevant.  RRI is not a defendant in this case.  J.M. may be entitled to equitable tolling based on confusion about the relationship between RRF and RRI, as explained above, but the 2022 case did not raise or depend on the resolution of that issue.  The court therefore denies RRF's motion for judgment on the pleadings of the beneficiary claim.

## V.    CONCLUSION

For the reasons above, the court **grants the motion in part with leave to amend** as to J.M.'s claim of conspiracy liability and **denies it in all other respects**.  If plaintiff wishes to amend the conspiracy allegations in her complaint based on the discussion in this order, she must file an amended complaint within twenty-one (21) days.  If she wishes to proceed on the complaint without relying on the conspiracy allegations she may notify the court within twenty-one (21) days; from the date of the filing of any such notice, RRF's answer will be due within twenty-one (21) days, and the parties' joint pretrial scheduling statement will then be due within thirty (30) days of RRF's filing of its answer.

IT IS SO ORDERED.  This order resolves ECF No. 38.

DATED: August 19, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] RRF uses the phrase "RRI Stockton" to refer to the hotel itself.  *See* Mot. at 2.  It is unclear whether RRF intends this reference to include PDK or any other defendants or parties.  The court need not and does not decide in this order whether the claims against any other parties or entities are or are not precluded.